# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5296 | **DATE** | 2/2/2001 |
| **CASE TITLE** | Camille Kozlowski, et al, et al vs. Rita Fry, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' Motion to Dismiss Plaintiffs' Complaint (7-1) is granted in part and denied in part. The Cook County Board of Commissioners, its President, the individual Commissioners, and Ms. Fry, in her individual capacity, are dismissed, with prejudice, as Defendants from this action under both Counts I and II. Counts I and II remain against Defendants Ms. Fry, in her official capacity , and the County of Cook. Both the male and female Plaintiffs have stated a claim for relief in Count I (Title VII). Count II (Section 1983 and equal protection) is dismissed, with prejudice, with respect to the male Plaintiffs, but the female Plaintiffs have stated a claim for relief. Plaintiffs' prayer for punitive damages, under Count II, is stricken. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | 3 number of notices | Document Number |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | FEB 0 5 2001 date docketed | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | docketing deputy initials | **19** |
| VKD courtroom deputy's initials | | 2/2/2001 date mailed notice | |
| | | VKD mailing deputy initials | |

Date/time received in central Clerk's Office

FEB -2 PM 5: 05

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CAMILLE KOZLOWSKI, *et al.*      )
                                  )
            Plaintiffs,           )      No. 00 C 5296
                                  )
      v.                          )
                                  )      Magistrate Judge
RITA FRY, individually and        )      Arlander Keys
in her official capacity as       )
Cook County Public Defender,      )
*et al.*,                         )
                                  )
            Defendants.           )

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiffs'

Complaint pursuant to Federal Rule of Civil Procedure ("FRCP")

12(b)(6).[1]     Plaintiffs'   two-count   Complaint   alleges   that

Defendants, collectively, discriminated against them in violation

of Title VII of the Civil Rights of 1964 ("Title VII"), 42 U.S.C.

§ 2000(e) *et seq.*, (West 2000), and violated their rights to equal

protection under the Fourteenth Amendment to the United States

---

[1] Defendants in this action are Ms. Fry in her individual
and official capacity as Cook County Public Defender, John
Stroger in his official capacity as President of the Board of
Commissioners of Cook County, various past and present members of
the Board of Commissioners, and the County of Cook.  As will be
explained *infra*, Ms. Fry cannot be sued in her individual
capacity under Title VII, and the Board of Commissioners of Cook
County (as well as its President and the individual
Commissioners) are not proper defendants under either Count in
the Complaint.

19

Constitution and 42 U.S.C. § 1983 ("Section 1983")(West 2000), when Defendants failed to promote them into higher paying jobs.[2] For the following reasons, Defendants' Motion is granted in part, and denied in part.

## BACKGROUND

Plaintiffs, four females and three males, are employed by the Cook County Public Defender's Office ("Public Defender's Office") as supervisory attorneys. (Complaint ¶ 14.) The salaries of supervisory attorneys at the Public Defender's Office (including chiefs and directors) fall into one of eleven different salary levels, D1-D11, with D1 being the lowest paid slot, D6 the midpoint, and D11 the highest. (Complaint ¶ 16.) As of the filing of the Complaint (on August 29, 2000), only fourteen of the fifty-three supervisory lawyers were women, and prior to April 8, 2000, only one of the fourteen female supervisory attorneys was in a

---

[2] Defendants maintain that Plaintiffs lack standing to complain about discriminatory hiring, as all are currently employed by the Cook County Public Defender's Office. Under the Court's reading of the Complaint, however, Plaintiffs are not alleging discriminatory hiring *per se*, but rather only discriminatory promotions, in that Defendants repeatedly promoted, or hired, men with less experience, instead of promoting the more qualified female supervisors. Stated differently, the alleged hiring of men, with less experience and skill, into the higher paying slots prevented the more qualified females (and three male Plaintiffs) from being promoted – not from being hired.

salary slot above D6, and twelve of the women remained in the lowest slots from D1-D4. (Complaint ¶ 17.) As a percentage, 65 percent of the female supervisory attorneys occupied the bottom salary slots of D1 and D2, compared to only 18 percent of the men. (Complaint ¶ 21.)

Plaintiffs allege that female supervisory attorneys are disproportionately paid salaries in the lowest salary levels, while male supervisory attorneys earn salaries in the highest salary levels, even though many of the female supervisors in D1 and D2 have had more experience and skill than the men promoted. (Complaint ¶¶ 18-19, 24.) More specifically, Plaintiffs allege that the disparity between the salaries of the female and male supervisory attorneys results directly from the Public Defender's Office's lack of an objective and non-discriminatory promotion policy, and that male individuals with political or personal connections to Defendants are awarded the jobs commanding the higher salaries. (Complaint ¶¶ 22, 33, 36.) Plaintiffs also complain that Defendants have failed to provide reasonable notice to Plaintiffs when higher salaried slots become vacant, and have additionally failed to inform Plaintiffs as to how they may be promoted. (Complaint ¶ 43.)

Furthermore, Plaintiffs allege that, as a result of these

hiring and promotion practices, based on political patronage or personal connections, Defendants have also discriminated against males, in that Defendants prefer to hire men from outside the Public Defender's Office, rather than promote men in the lower slots, because to do so would highlight the discrimination by Defendants against the female supervisory attorneys. (Complaint ¶ 34.) Therefore, according to Plaintiffs, the discriminatory hiring practice has infected the entire promotion process, resulting in male Plaintiffs who have similarly been injured and kept in lower salary slots as the female Plaintiffs. (Complaint ¶ 39.)

In their Complaint, Plaintiffs explain that, on March 24, 2000, they filed an internal complaint of sex discrimination, and asked for a meeting with the Public Defender of Cook County, Rita Fry. (Complaint ¶ 25.) A meeting was held on April 10, 2000, where, according to Plaintiffs, Ms. Fry admitted that there had been "discrimination" in the Public Defender's Office, but that such discrimination had not been "intentional." (Complaint ¶ 27.) After the April 10th meeting, Ms. Fry promoted three of the women, who had signed the March 24th internal grievance, from D2 to D4 slots. (Complaint ¶ 28.) Nonetheless, according to Plaintiffs, Ms. Fry's abrupt promotions did not correct the discrimination admitted by her, but rather demonstrated that there was still no

objective, non-discriminatory system for promoting supervisors. (Complaint ¶ 32.)

## STANDARD FOR MOTION TO DISMISS

The purpose of a motion to dismiss, brought under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, is to test the sufficiency of the complaint. *Chicago Dist. Council of Carpenters Pension Fund v. G & A Installations, Inc.*, No. 95 C 6524, 1996 WL 66098, at *1 (N.D. Ill. Feb. 8, 1996). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pled factual allegations in the complaint, and draws all reasonable inferences therefrom in the plaintiff's favor. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1343 (7th Cir. 1995). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)(citation omitted). However, a complaint must sufficiently allege facts which set forth the essential elements of the cause of action. *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir. 1988). Nevertheless, the Supreme Court has made it clear that there is no heightened pleading requirement for civil rights actions. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination*

*Unit,* 507 U.S. 163, 168 (1993). Therefore, the plaintiff's complaint must comply with Rule 8(a) of the Federal Rules of Civil Procedure by setting out "a short and plain statement of the claim showing that the pleader is entitled to relief." *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734 (7th Cir. 1994).

## DISCUSSION

Defendants attack each count of Plaintiffs' Complaint on various grounds. With respect to Count I (Title VII), Defendants argue that it should be dismissed because Defendants do not employ Plaintiffs, and that Plaintiffs have failed to allege a *prima facie* case of discrimination. With respect to Court II (equal protection and Section 1983), Defendants assert that Ms. Fry is immune from liability under Section 1983, that Plaintiffs have failed to allege the elements of a Section 1983 claim based on equal protection, and that Plaintiffs improperly brought Count II against Defendants who could not be sued under Title VII. Each of Defendants' arguments will be addressed in turn.

A.  **Count I Must Be Dismissed Against Ms. Fry in Her Individual Capacity and Against the Board of Commissioners of Cook County; However, Count I Survives Against Ms. Fry in Her Official Capacity and Against the County of Cook.**

In Count I, Plaintiffs sue Ms. Fry, the Cook County Public Defender, in her individual and official capacity under Title VII.

-6-

But, as Defendants correctly point out, Ms. Fry, individually, is not Plaintiffs' employer. Under Title VII, a supervisor does not, in his or her individual capacity, fall within Title VII's definition of employer.[3] *Williams v. Banning*, 72 F.3d 552, 554-55 (7th Cir. 1995)(affirming granting of motion to dismiss because supervisor, in individual capacity, did not fall within purview of Title VII); *see also Blumenthal v. Murray*, 995 F. Supp. 831, 835 (N.D. Ill. 1998)(granting motion to dismiss against individuals under Title VII); *Patel v. Board of Governors of State Colleges and Universities,* No. 92 C. 8300, 1997 WL 399644, at *2 (N.D. Ill. July 11, 1997)(explaining that lawsuits under Title VII must proceed against the employer directly, or through its agents in their official capacity)(citation omitted); *U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995)(finding that Congress did not contemplate individual liability when it originally passed Title VII, ADEA and the ADA). Indeed, Plaintiffs, in their Response to Defendants' Motion to Dismiss ("Response") do not dispute the aforementioned authority. Accordingly, Count I against Ms. Fry, in her individual capacity,

---

[3] Title VII defines "employer" as " a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person."  42 U.S.C. § 2000e(b).

is dismissed with prejudice under FRCP 12(b)(6).

In addition, Count I (as well as Count II) must be dismissed with prejudice against the Board of Commissioners of Cook County ("the Board") and all its individual Commissioners (including the President, John Stroger). A government entity's capacity to be sued in federal court is governed by Illinois state law. *Wright v. Board of County Com'rs of Cook County, Ill.*, No. 99 C. 1998, 1999 WL 1249313, at *3 (N.D. Ill. Dec. 17, 1999). Under Illinois law, the Board is not an entity subject to suit separate from the county, and consequently, lacks the legal capacity to be sued. *Id.* "Rather, [the Board's] powers are co-extensive with the County." *Richardson v. County of Cook*, 621 N.E.2d 114, 116-17 (Ill. App. 1993). Therefore, while the County of Cook may be sued, the Board may not.[4]

---

[4] Defendants further explain that several individual Commissioners of the Board, whom Plaintiffs name as Defendants in their Complaint, are no longer Commissioners of the Board. Because the Board is not a proper Defendant in this action, the individual Commissioners of the Board (including the President), who are being sued in their official capacities, are also not proper defendants. An official capacity suit against a municipal officer is essentially a suit against the municipality. *Brandon v. Holt*, 469 U.S. 464, 472 (1985); *see also Baxter by Baxter, supra*, 26 F.3d at 733, fn. 4(finding that, because a judgment against an official of a local government entity, sued in his official capacity, would be satisfied by that entity, suits against individuals sued in their official capacities are really
(continued...)

While Defendants correctly assert that Ms. Fry, in her individual capacity, and the Board and its Commissioners, are not proper Defendants, Defendants erroneously argue that the County of Cook is not a proper Defendant under Count I. According to Defendants, the real employer of Plaintiffs is the State of Illinois, which is an unnamed Defendant in this action. But Defendants base this assertion on questionable – and outdated – legal authority, which holds that the Public Defender's Office is an arm of the state and not the county. *See Warren v. Stone*, 958 F.2d 1419, 1422-25 (7th Cir. 1992). However, as explained in this Court's recent opinion, *Sapienza v. Cook County Office of Public Defender*, No. 99 C 4386, 2001 WL 59056, at * 4 (N.D. Ill. Jan. 23, 2001), which in turn relied on the Illinois Supreme Court's recent opinion, *Johnson v. Holloran*, No. 89594, 2000 WL 1763274,**2-3 (Ill. Dec. 1, 2000), the Public Defender's Office is an arm of the county – and not the state. Indeed, Defendants reluctantly concede this point in their Reply to Defendants' Motion to Dismiss ("Reply"). Therefore, Cook County, and Ms. Fry in her official

---

[4](...continued)
suits against the entity itself)(citation omitted). Therefore, it is irrelevant whether any Defendant is a past or present Commissioner of the Board, since all Commissioners are not proper Defendants in the case *sub judice*.

capacity,[5] are proper Defendants under Count I.

**B.    Under Federal Pleading Requirements, Plaintiffs State a Valid Claim of Employment Discrimination Under Title VII For Both the Male and Female Plaintiffs.**

Defendants assert that Plaintiffs fail to allege, in their Complaint, the elements of a *prima facie* case of discrimination under Title VII, and that therefore, Count I should be dismissed. But it is well established that, in federal court, plaintiffs do not need to plead the *prima facie* elements of discrimination claims in the complaint. *See, e.g., American Nurses' Ass'n. v. State of Ill.*, 783 F.2d 716, 723 (7th Cir. 1986)(suggesting that, in sex discrimination cases, the simple allegation that a defendant intentionally discriminated against its female employees, because of sex, is enough to state a claim which would survive a motion to dismiss under Rule 12(b)(6)); *Welch v. Cook County Clerk's Office*, 36 F. Supp.2d 1033, 1037 (N.D. Ill. 1999)("Although the complaint may not plead all elements necessary to establish a prima facie case, the pleadings are sufficient to give Defendant and the court notice of Plaintiff's claims of employment discrimination . . ."); *Carroll v. Perfecto Screw & Engineering, Inc.*, No. 91 C 7366, 1992

---

[5] Defendants acknowledge that Ms. Fry, in her official capacity, is a proper defendant under Count I. (*See* Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def.'s Memo.") at p. 5, fn 4.)

WL 159456, at **1-2 (N.D. Ill. June 26, 1992)(finding that plaintiff does not need to allege each element of *prima facie* case in the complaint, but rather only needs to provide notice to defendant of discrimination claim). Furthermore, the pleading requirements in discrimination cases are easily met. *Carroll, supra*, 1992 WL 159456, at * 1.

Despite the aforementioned authority that Plaintiffs do not need to plead a *prima facie* case of employment discrimination in their Complaint, the Court finds that, in the case *sub judice*, the Plaintiffs have, in fact, plead their *prima facie* case of discrimination. Under Title VII, a plaintiff may argue disparate treatment (which requires discriminatory motive) and/or disparate impact (which does not require discriminatory motive.) *See EEOC v. Francis W. Parker* School, 41 F.3d 1073, 1076 (7th Cir. 1994). While Plaintiffs do not expressly state, in their Complaint, which legal theory they are employing, this is not fatal to their claims under the liberal pleading rules. *See Adams v. Lewis University*, No. 97 C 7636, 1999 WL 162762, at * 2 (N.D. Ill. March 12, 1999)("A plaintiff is not required 'to specify particular legal theories in a complaint, so long as the facts alleged give adequate notice to the defendant of the basis of the suit.'")(citation omitted).

With respect to disparate treatment, Plaintiffs allege that men with less experience and skills were promoted to higher paying jobs over more qualified female supervisors. (Complaint ¶¶ 19, 24.) Additionally, Plaintiffs state that this discrimination has been intentional.[6] (Complaint ¶¶ 36, 39.) Hence, a *prima facie* case of disparate treatment has been alleged under the indirect method of proof.[7]

With respect to disparate impact, Plaintiffs allege that Defendants have a policy of hiring men based on political patronage and personal favors, which has operated to discriminate against women. (Complaint ¶¶ 33, 36-37). Moreover, Plaintiffs allege direct evidence of discrimination in paragraph 27 of their

---

[6] However, as pointed out by Plaintiffs, they do not even need to specifically allege "intent", as it is already implied by a claim of discrimination. *See Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).

[7] If there is no direct evidence of discrimination, then Plaintiffs must establish a *prima facie* case of discrimination under the indirect method of proof enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). To state a *prima facie* case for failure to promote, Plaintiffs must establish (1) they are members of a protected class; (2) they applied for and were qualified for an available position; (3) they were rejected for the promotions; and (4) those who were promoted had similar or lesser qualifications for the job. *Ghosh v. Indiana Dept. of Environmental Management*, 192 F.3d 1087, 1091 (7th Cir. 1999). As explained above, Plaintiffs have alleged these elements.

Complaint, which states that Ms. Fry admitted that there was "discrimination", but that it was "not intentional." (Complaint ¶ 27.) Assuming this fact to be true (which the Court must do on a motion to dismiss), Ms. Fry's admission to discrimination, albeit unintentional, is the crux of a disparate impact claim under Title VII (where discriminatory motive is not required). Therefore, even if the pleading rules required Plaintiffs to allege their *prima facie* case of discrimination under Title VII, Plaintiffs have met this burden under both the disparate impact and disparate treatment theories under Title VII.[8]

---

[8] Defendants argue, in footnote 9 of Def.'s Memo., that Plaintiffs do not allege any of the dates on which the alleged discriminatory refusals to promote occurred, rendering it impossible to determine if their claims are timely. (In Illinois, Plaintiffs have 300 days from the alleged discrimination to file a charge with the Equal Employment Opportunity Commission ("EEOC"), 42 U.S.C. § 2000e-5(e).) While the better practice would have been for Plaintiffs, in their Complaint, to set forth the dates of the alleged discriminatory refusals to promote, and the date that they filed their charges with the EEOC, it is not fatal to a motion to dismiss. *See Tregenza v. Great Amer. Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993)(stating that it is normally difficult to determine whether a claim is barred by the statute of limitations on a motion to dismiss since "[t]he statute of limitations is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in his complaint."); *Shipbaugh v. Boys & Girls Clubs of America,* 883 F. Supp. 295, 298 (N.D. Ill. 1995)(finding that, in order to hold that statute of limitations bars plaintiff's claims, the court would have to find that, under no circumstances, could plaintiff establish any set of facts

(continued...)

However, one last point is worth mentioning: Defendants question whether the male Plaintiffs can legitimately state a claim of sex discrimination under Count I, in that the Complaint alleges that Defendants favored men over women. While at first blush, this would appear to be a persuasive point, courts within this Circuit's jurisdiction have found that male plaintiffs have standing to bring claims that they are harmed by discrimination against women. For instance, in *Allen v. American Home Foods, Inc.*, 644 F. Supp. 1553 (N.D. Ind. 1985), male employees, who lost their jobs when their employer closed the plant, allegedly on the basis of discrimination

---

[8](...continued)
which could entitle plaintiff to relief); *Pacourek v. Inland Steel Co.*, 858 F. Supp. 1393, 1399 (N.D. Ill. 1994)(refusing to dismiss complaint, based on statute of limitations, because the plaintiff had not pleaded herself out of court; "in other words, it does not follow inevitably from the Complaint that [plaintiff's claims] are time-barred."). In the case *sub judice*, since Plaintiffs have not plead facts showing that their claims are, indeed, time-barred, the Court will not dismiss the Complaint merely because the exact dates are not mentioned. (The Court further notes that, on March 24, 2000, Plaintiffs sent a grievance to Ms. Fry discussing "recent" failures to promote. While the dates of the failures to promote are not given, March 24, 2000 is well within 300 days of when the Plaintiffs received their Right to Sue Letters (on July 19, 2000) from the EEOC, thereby definitely being within 300 days of when the Plaintiffs filed their EEOC charges. Since the failures to promote, presumably, were around March 24, 2000, the facts, that are mentioned in the Complaint, do not support dismissal based on the statute of limitations. Of course, Defendants could raise this issue again, for instance, on a motion for summary judgment.)

against *female* employees, had standing to bring a Title VII employment discrimination action seeking damages from the employer. The court found that the male plaintiffs were not asserting the rights of third persons (i.e. the women) - or claiming that they were retaliated against for opposing discrimination against women - but were rather asserting their own injuries based on their own rights. 644 F. Supp. at 1556.

While acknowledging that the case appeared to be one of first impression, the *Allen* court relied on an earlier Seventh Circuit case, *Stewart v. Hannon*, 675 F.2d 846 (7th Cir. 1982), which had held that Title VII provided standing to all who suffered an injury due to an unlawful business practice, and that the loss of benefits from interracial associations was a cognizable injury. (In *Stewart*, a white plaintiff wanted to enjoin a discriminatory hiring practice that discriminated against minority applicants.) While *Allen* acknowledged several differences between itself and *Stewart*, namely that *Stewart* concerned race (and not sex) discrimination, that *Stewart* only requested equitable relief, and that *Allen* did not involve associational benefits *per se*, *Allen*, nonetheless, held that, based on *Stewart*, the scope of "person aggrieved" under Title VII confers standing to all persons injured by an unlawful

employment practice.  644 F. Supp. at 1557.  Consequently, *Allen* held that the male plaintiffs alleged injury to themselves – based on discrimination against women – and had standing under Title VII. *See also Probst v. Reno*, No. 94 C 691, 1995 WL 613129, at * 8 (N.D. Ill. Oct. 17, 1995)(allowing plaintiff to proceed on Title VII retaliation claim based on acts against his wife, because plaintiff could recover if there was a proximate cause nexus between the acts of the defendants toward plaintiff's wife, and an injury that plaintiff sustained).

Therefore, based on *Allen*, *Stewart*, and *Probst* – cases all within this Circuit's jurisdiction – the male Plaintiffs, in the case at bar, have standing to assert that Defendants' discrimination against female supervisors (in hiring men based on political connections and favors), caused injury to themselves.[9] Defendants' reliance on *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176 (7th Cir. 1998) to argue otherwise is unavailing, because *Bermudez* holds that individuals cannot enforce the rights of

---

[9] The Court also notes that cases in other jurisdictions have adopted similar conclusions. *See, e.g., Angelino v. New York Times,* 200 F.3d 73, 92 (3rd Cir. 1999)(recognizing that "indirect victims of sex-based discrimination have standing to assert claims under Title VII if they allege colorable claims of injury-in-fact that are fairly traceable to acts or omissions by defendants that are unlawful under the statute.").

others.[10]  Here, however, the male Plaintiffs are not asserting the rights of others, but rather the rights of themselves.  According to the male Plaintiffs in the case at bar, the discrimination against women has resulted in injury to themselves – not the female Plaintiffs.  Indeed, the female Plaintiffs assert their own injuries based on discrimination against women, and the male Plaintiffs assert their own injuries based on the same discrimination against women.  Therefore, based on authority in this Circuit, and the liberal pleading requirements, the Court will not dismiss the male Plaintiffs' allegations of sex discrimination under Title VII.

In sum, Count I (Title VII) remains against Defendants Ms. Fry, in her official capacity, and the County of Cook.  Defendants Ms. Fry, in her individual capacity, and the Board (as well as the President and individual Commissioners) are dismissed, with

---

[10] *Bermudez* also concerned whether the plaintiff had an "actual injury" when she felt "uncomfortable" because of discrimination that was not directed at her. However, *Bermudez* recognized that "mental distress" could satisfy the "actual injury" requirement of Article III.  138 F.2d at 1180.  Because the case *sub judice* is on a motion to dismiss, and the male Plaintiffs have alleged injury (*see* Complaint ¶¶ 39-40), the male Plaintiffs have stated a claim for relief.  While the Court notes that the male Plaintiffs' remedies might be limited by the nature of their suit, the Court, nonetheless, cannot find that the male Plaintiffs could prove no set of facts at trial that would entitle them to relief.

prejudice, for the reasons set forth above.

C.   **Under Count II, The Eleventh Amendment Does Not Bar Suit Against Ms. Fry in Her Official Capacity.**

Defendants incorrectly argue that Ms. Fry, in her official capacity, is immune from liability under Section 1983 pursuant to the Eleventh Amendment.   While the Eleventh Amendment does bar Section 1983 claims against state employees in their official capacities,[11] as explained *supra*, Ms. Fry is not an employee of the state, but rather of the County of Cook.  *See Sapienza, supra,* and *Johnson, supra.*  Significantly, the Eleventh Amendment does not bar suits against counties or county officials.   *See Ruehman v. Sheahan,* 34 F.3d 525, 528 (7th Cir. 1994) (holding that Illinois counties and municipalities are not shielded by the Eleventh Amendment).    Therefore, Ms. Fry, in her official capacity, may be sued under Section 1983 in the case *sub judice.*[12]

D.   **Under Count II, Plaintiffs Have Properly Alleged the Elements of a Claim Under Section 1983.**

Because Section 1983 does not provide any substantive rights,

---

[11] *See Cannon v. Univ. of Health Sciences,* 710 F.2d 351, 356 (7th Cir. 1983)(holding that Section 1983 claims are "barred by the Eleventh Amendment [which] acts as a jurisdictional bar to suit against a state in federal court, absent the state's consent to suit").

[12] The County of Cook is also a proper Defendant in the case at bar.

an essential element of recovery under Section 1983 is that Plaintiffs were deprived of "rights, privileges, or immunities secured by the Constitution and laws." *Huebschen v. Dept. of Health and Social Services*, 716 F.2d 1167, 1170 (7th Cir. 1983)(quotations omitted). As such, to properly state a claim for relief, Plaintiffs must satisfy the requirements of both Section 1983 and their Constitutional source of deprivation, which in the case at bar, is the equal protection clause. *See Id.* Section D, of this opinion, deals solely with whether Plaintiffs have satisfactorily alleged a claim under Section 1983. Section E will discuss whether Plaintiffs have properly alleged a claim of equal protection.

To state a claim under Section 1983, Plaintiffs must allege that: (1) they had a constitutionally protected right; (2) they were deprived of this right in violation of the Constitution;[13] (3) Defendants intentionally caused this deprivation; and (4) the Defendants acted under color of state law. *Welch, supra,* 36 F. Supp.2d at 1038. While acknowledging that Defendants allegedly acted under "color of state law", Defendants argue that Plaintiffs

---

[13] These first two elements will be addressed thoroughly, in Section E of this opinion, which deals exclusively with the equal protection claim.

have failed to specify the actions taken by each Defendant, and to demonstrate that each Defendant's action intentionally caused the Plaintiffs' deprivation of rights.[14] (*See* Def.'s Memo at p. 13.) Given that the Board, its President, and the individual Commissioners have been dismissed, with prejudice, from this suit, the only Defendants remaining are Ms. Fry, in her official capacity, and the County of Cook. The Court finds that Plaintiff's Complaint does, in fact, specify the actions taken by the remaining Defendants, and otherwise states a claim for which relief can be granted.

Drawing all inferences in favor of Plaintiffs, Plaintiffs essentially allege that Ms. Fry, and the County of Cook, adopted a policy or custom, where promotions were based on political patronage and connections, and that this policy intentionally, and in effect, discriminated against Plaintiffs. (*See* Complaint ¶¶ 36-37.) While one piece of evidence in their Complaint suggests that the discrimination was unintentional (i.e. Ms. Fry's alleged admission of unintentional discrimination), other paragraphs of the Complaint allege that the discrimination was intentional. (*See*

---

[14] Defendants also argue that Plaintiffs failed to allege that they were injured by the discrimination. (Def.'s Memo at p. 14.) Despite that injury may be presumed from discrimination, Plaintiffs do allege injuries, such as lower pay.

Complaint ¶¶ 37, 39.)

Defendants are correct that, to state a Section 1983 claim against a municipality or local government entity (such as the County of Cook), an official policy or custom must be alleged, as government bodies may not be sued based on a respondeat superior theory. *Monell v. Dept. of Social Services of City of New* York, 436 U.S. 658, 691 (1978). There are three recognized contexts where a municipality, or other local governing body, may be sued under Section 1983: (1) for an express policy that, when enforced, causes a constitutional deprivation; (2) for a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) for an allegation that the constitutional injury was caused by a person with final policymaking authority. *Allen v. Chicago Transit Authority*, No. 99 C 7614, 2000 WL 1038134, at * 4 (N.D. Ill. July 25, 2000)(citation omitted).

The Supreme Court has made it clear that there is no heightened pleading requirement for Section 1983 claims. *Leatherman, supra,* 507 U.S. at 168. Furthermore, the federal system of notice pleading applies to Section 1983 claims, and plaintiffs alleging a municipal policy or custom are not required

to give detailed facts in support of their claims. *Id.* However, the Seventh Circuit has repeatedly held that "boilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient." *Looper Maintenance Service Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999)(citations and quotations omitted). To state a claim under *Monell*, a plaintiff must "allege a specific pattern or series of incidents that support the general allegation of a custom or policy." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986).

The Court finds that the Complaint is sufficient to support Plaintiffs' Section 1983 claim. First, allegations of a pattern or series of acts is sufficient to raise an inference of official policy. *Powe v. City of Chicago*, 664 F.2d 639, 651 (7th Cir. 1981). In the case at bar, Plaintiffs have alleged an ongoing, widespread pattern of failing to promote more qualified female supervisors, in favor of promoting less qualified men with political connections.[15] Whether this is an "official policy" or

---

[15] The case *sub judice* is strikingly similar to *Allen v. Chicago Transport Authority, supra*, where the Court refused to dismiss plaintiffs' complaint concerning *Monell* allegations. *Allen* rejected defendant's contention that plaintiffs only

(continued...)

-22-

merely a widespread "custom or usage" is irrelevant, since Plaintiffs only have to allege one theory under *Monell* to withstand a motion to dismiss. Furthermore, given that Ms. Fry is the Cook County Public Defender, and ostensibly admitted to discrimination, there is an inference that Plaintiffs' injuries were caused by a person with final policymaking authority. *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 283 (7th Cir. 1986)(finding that the acts of a high-ranking officer of a governmental entity may render the entity liable under Section 1983, where the official is a policymaker whose conduct is in effect that of the governmental entity).[16] In sum, Plaintiffs have satisfactorily alleged a *Monell* claim under Section 1983, in that they alleged the existence of a municipal "policy" or "custom", which acted as a catalyst for the constitutional deprivation. *Mendez v. Rutherford*, 687 F. Supp. 412, 415 (N.D. Ill. 1988).

---

[15](...continued)
alleged "boilerplate" allegations on *Monell* grounds, finding that plaintiffs had alleged more than a single incident of discrimination, and, in fact, had alleged repeated incidents of discrimination over a span of years. 2000 WL 1038134, at * 6. Similarly, in the case *sub judice*, the Court finds that Plaintiffs have alleged more than "boilerplate" allegations, and have satisfactorily alleged a pattern of ongoing discrimination.

[16] Whether Ms. Fry is actually a policymaker, as understood by *Monell*, is not a concern of the Court on a motion to dismiss.

The Court now turns to whether Plaintiffs have sufficiently alleged that constitutional deprivation: equal protection.

### E. While the Female Plaintiffs Satisfactorily Allege an Equal Protection Claim, the Male Plaintiffs Do Not.

In order to withstand a motion to dismiss on an equal protection claim under the Fourteenth Amendment, Plaintiffs must set forth facts which demonstrate that Defendants' conduct was motivated by discriminatory animus. *Coburn by Bowman v. Weiss*, No. 91 C 2717, 1991 WL 212148, at * 1 (N.D. Ill. Oct. 11, 1991). More specifically, Plaintiffs must allege that there was intentional discrimination against them because of their membership in a particular class. *Miskoci v. Village of Hoffman Estates,* No. C. 1692, 1985 WL 2098, at * 3 (N.D. Ill. July 10, 1985). The male Plaintiffs have failed to do this – rather, they allege that there was discrimination against women, which resulted in injury to themselves. While such a theory is cognizable under Title VII (*see supra*), it is not under the equal protection clause, where the male Plaintiffs must allege intentional discrimination against themselves, because of *their* membership in a protected class. Furthermore, a disparate impact theory will not suffice for equal protection claims. *See Armstrong v. Chicago Park Dist.,* 693 F. Supp. 675, 678 (N.D. Ill. 1988)(holding that disparate impact

theory of liability is not available under Section 1983, because only intentional discrimination violates the equal protection clause).

*David K. v. Lane*, 839 F.2d 1265 (7th Cir. 1988), is particularly instructive on this point. In *David K.*, the Seventh Circuit held that, even though the prison's anti-gang policy may have had a disparate impact on white inmates, the plaintiffs failed to show that the prison "harboured [sic] a discriminatory motive in implementing those policies." 839 F.2d at 1271. Stating further, the court said:

> The Equal Protection Clause has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers . . . . A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose however, implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group. Therefore, even though certain [prison] policies, though facially neutral, may effect certain groups unevenly, such an uneven effect will not give rise to constitutional concern unless the policy is an obvious pretext for discrimination against the suspect class.

*Id.* (citations and quotations omitted).

Here, Plaintiffs allege that the policy of hiring men for promotions, based on political patronage and connections, has

-25-

discriminated intentionally, or in effect, against women. (*See* Complaint ¶¶ 36-37.) The male Plaintiffs allege that they would be in higher paying slots if Defendants had not discriminated against the women by hiring men from outside the office. (*See* Complaint ¶ 40.) But, fatal to the male Plaintiffs' equal protection claim, is the lack of any allegation that Defendants purposefully discriminated against the male Plaintiffs because they were male. Indeed, Plaintiffs state that Defendants *favored men over women* in promotions. (*See* Complaint ¶¶ 33, 35.) Consequently, Count II is dismissed, with prejudice, with respect to the male Plaintiffs.[17]

Nonetheless, the female Plaintiffs have alleged facts to withstand a motion to dismiss. While the Court has some reservations as to whether the female Plaintiffs will, ultimately, be able to prove that the Public Defender's Office purposefully and intentionally discriminated against women (as opposed to adopting a policy or custom of political patronage and favoritism that had a disparate impact on women), this is a motion to dismiss, and the

---

[17] This claim is dismissed with prejudice (as opposed to without prejudice) because Plaintiffs cannot allege, in good faith, that the male Plaintiffs were purposefully targeted for discrimination, because that would be inconsistent with the female Plaintiffs' claims that Defendants favored men over women.

female Plaintiffs have alleged in their Complaint that Defendants intentionally discriminated against them because they were female. (*See* Complaint ¶¶ 37, 39). Under the liberal pleading rules, this allegation is sufficient to withstand a motion to dismiss on equal protection grounds.

## F. Count II Must Be Dismissed Against Ms. Fry In Her Individual Capacity.

Defendants correctly argue that Plaintiffs may not sue any Defendants under Section 1983 who could not be sued under Title VII (Count I). *See Yagnisis v. Illinois Dept. of Public Aid*, 95 C 2209, 1996 WL 451308, at * 9 (N.D. Ill. Aug. 6, 1996). But, as explained *supra*, the only Defendant that cannot be sued under Title VII is Ms. Fry, in her individual capacity.[18] The County of Cook, and Ms. Fry in her official capacity, are proper Defendants under Count I and, therefore, are proper Defendants under Count II.

## G. Plaintiffs' Claims for Punitive Damages in Count II are Stricken.

In their prayer for relief in their Section 1983 claim, Plaintiffs request punitive damages. However, as correctly argued by Defendants, municipalities are immune from punitive damages under Section 1983. *See Opal v. Cencom E 911*, No. 93 20124, 1994

---

[18] Of course, as explained *supra*, the Board, and its Commissioners, in their official capacities, can never be sued.

WL 97723, at * 6 (N.D. Ill. March 22, 1994)("Municipalities are immune from liability for punitive damages under section 1983."); *Ferguson v. Joliet Mass Transit Dist.*, 526 F. Supp. 222, 223 (N.D. Ill. 1981)(same).

Since the only remaining Defendants in this action are Ms. Fry, in her official capacity,[19] and the County of Cook, Plaintiffs may not recover punitive damages under Count II, which is based on Section 1983. Indeed, in their Response, Plaintiffs do not challenge this conclusion, or insist that they are entitled to punitive damages under the Section 1983 claim. Consequently, Plaintiffs' request for punitive damages in Count II is stricken.

## CONCLUSION

For the reasons set forth above, the Cook County Board of

---

[19] As explained *supra*, the suit against Ms. Fry, in her official capacity, is really a suit against the county itself. Since the county would pay any damages award – and the county is immune from punitive damages under Section 1983 – then the punitive damage award against Ms. Fry, in her official capacity, must also be stricken. *See Collier v. City of Freeport*, No. 86 C 20222, 1988 WL 124716, at * 1 (N.D. Ill. Oct. 13, 1988)("When an official is sued in his official capacity, there is a general presumption that no punitive damages are available in a S 1983 action."); *Davis v. Town of Cicero*, No. 88 C 8128, 1990 WL 103289, at * 2 (N.D. Ill. July 13, 1990)("Inasmuch as plaintiff seeks punitive damages from [defendant] in his official capacity, the claim must be dismissed since punitive damages are not recoverable under section 1983 against a municipality or its agents acting in an official capacity.").

Commissioners, its President, the individual Commissioners, and Ms. Fry, in her individual capacity, are dismissed, with prejudice, as Defendants from this action under both Counts I and II. Counts I and II remain against Defendants Ms. Fry, in her official capacity, and the County of Cook. Both the male and female Plaintiffs have stated a claim for relief in Count I (Title VII). Count II (Section 1983 and equal protection) is dismissed, with prejudice, with respect to the male Plaintiffs, but the female Plaintiffs have stated a claim for relief. Finally, Plaintiffs' prayer for punitive damages, under Count II, is stricken.

IT IS THEREFORE ORDERED that:

Defendants' Motion to Dismiss be, and the same hereby is, GRANTED IN PART, and DENIED IN PART.

Dated: February 2, 2001          ENTER:

ARLANDER KEYS